IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
December 8, 2015 Session

**KENTAVIS JONES v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Madison County**
**No. C-14-251      Donald H. Allen, Judge**

_____

**No. W2015-00459-CCA-R3-PC  -  Filed March 18, 2016**

_____

A Madison County jury convicted the Petitioner, Kentavis Jones, of two counts of aggravated assault, one count of reckless endangerment, and one count of employing a firearm during the commission of a dangerous felony. The Petitioner filed a petition for post-conviction relief, which the post-conviction court denied after a hearing. On appeal, the Petitioner maintains that he received the ineffective assistance of counsel. The State contends that the Petitioner's appeal is untimely and that he is not entitled to post-conviction relief. After review, we conclude there exists no error. We affirm the post-conviction court's judgment.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and ALAN E. GLENN, J., joined.

J. Colin Morris, Jackson, Tennessee, for the appellant, Kentavis Jones.

Herbert H. Slatery III, Attorney General and Reporter; Tracy L. Alcock, Assistant Attorney General; Jerry Woodall, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

This case arises from the Petitioner's conviction for two counts of aggravated assault, one count of reckless endangerment, and one count of employing a firearm during the commission of a felony. The Petitioner's indictments and judgments of conviction are not included in the record, but he lists his convictions in his petition for post-conviction relief. In the petition, the Petitioner contended that: (1) the jury's verdict

on Counts 2 and 4 violated double jeopardy; (2) the trial court committed plain error when it denied his motion for judgment of acquittal; (3) the evidence was insufficient to sustain his conviction; and (4) his trial was unfair because his trial counsel was ineffective. The State moved to dismiss the petition, asserting that the issues raised by the Petitioner were waived or were previously determined. Finding that the Petitioner presented a colorable claim, the post-conviction court appointed the Petitioner counsel.

The Petitioner's appointed counsel filed an amended petition for post-conviction relief in which he alleged that the Petitioner's trial counsel was ineffective for failing to: (1) challenge the jury's verdict on Counts 2 and 4 as violating double jeopardy; (2) challenge the trial court's denial of his motion for judgment of acquittal; (3) challenge the sufficiency of the evidence; (4) challenge whether the proceeding was fair; (5) adequately investigate the case; (6) correct false witness testimony during the trial; (7) challenge the identity of the Petitioner at the preliminary hearing; (8) develop an alibi defense; and (9) file a motion to suppress the witness statements based upon their inconsistency.

The trial court held a hearing on January 14, 2015, during which the parties presented the following evidence: The Petitioner's trial counsel ("Counsel") testified that he represented the Petitioner in the trial in this case. He said that he first appeared on the Petitioner's behalf in June 2013 when the Petitioner was arraigned. The Petitioner pled not guilty to all the charges against him, which included two counts of attempted second degree murder, two counts of aggravated assault, and one count of employing a firearm during the commission of a dangerous felony.

Counsel testified that he met with the Petitioner on three occasions at the jail. Counsel recalled that his trial strategy was to assert that the Petitioner was not involved in the shooting. He said that the two eyewitnesses did not mention the Petitioner. Counsel intended to point out that the Petitioner had no prior problem with the victims and had no motive to shoot at them. Counsel said he did not present a self-defense claim like the Petitioner's co-defendant but instead focused on the fact that no witness identified the Petitioner.

Counsel said that he and the Petitioner had a good working relationship. He said that he advised the Petitioner not to testify because the Petitioner had at least one prior felony conviction that could have been used to impeach his credibility. He thought the better strategy was for the Petitioner to not testify and for Counsel to argue that the State had not proven its case.

Counsel said that the victims' testimony was "shaky," meaning that there were discrepancies between their testimony and written statements. He used these points to impeach the witnesses. Counsel said that he moved for a judgment of acquittal and that

he felt he effectively argued to the jury on the Petitioner's behalf. He noted that the jury acquitted the Petitioner of attempted second degree murder on both victims, showing that they had at least some question about the Petitioner's level of involvement.

Counsel testified that he filed a motion for new trial based upon the sufficiency of the evidence and various other issues. Counsel said that he appealed the Petitioner's case. Before completing the Petitioner's appellate brief, the Petitioner contacted him about withdrawing from the case or withdrawing from the appeal. Counsel responded in writing to the Petitioner stating that the Court of Criminal Appeals would likely deny a motion for him to withdraw as his attorney. He gave the Petitioner a waiver of appeal as another option. He explained in the letter that if he waived his right to appeal, then the issue was going to be over. He said the waiver itself also contained this language. Counsel asked the Petitioner to advise him what the Petitioner wanted him to file or how he wanted Counsel to proceed. The Petitioner signed and sent back the motion to withdraw the appeal, so Counsel filed it. The Court of Criminal Appeals granted the motion. Counsel said that he thought the Petitioner's appeal contained legitimate issues but that he was constrained to file the waiver of appeal when he received it.

Counsel testified that, during the trial, the Petitioner communicated with him effectively and made the decision not to testify. Counsel said the Petitioner did not offer any other witness to testify on his behalf. Counsel said that he highlighted the State's witnesses' inconsistencies in testimony when he argued to the jury. Counsel mentioned that many of the issues raised in the Petitioner's post-conviction petition were not applicable to his representation of him but could have been raised on direct appeal had the Petitioner not chosen to withdraw his appeal.

The Petitioner testified that he was sentenced to six years at thirty percent for both of the aggravated assault convictions, and two years at thirty percent for the reckless endangerment conviction. He said he was sentenced to six years at 100 percent for the employing a deadly weapon during a dangerous felony conviction, which was ordered to run consecutively to the two six-year sentences for aggravated assault. He articulated his sentence as "12 at 30 [percent] and a six," seemingly meaning an effective sentence of eighteen years.

The Petitioner said that he offered Counsel the names, addresses, and telephone numbers of two alibi witnesses. The Petitioner said Counsel tried to call these witnesses, but their phones were disconnected. The Petitioner then said that he was unsure whether he gave Counsel the witnesses' addresses. The Petitioner said Counsel never subpoenaed those witnesses to trial. The Petitioner said that he never received a transcript of the preliminary hearing, even after he requested it from Counsel. The Petitioner said he

wished that Counsel had used a transcript from the preliminary hearing to prepare for trial.

The Petitioner testified that Counsel never presented him with a plea offer from the State.

The Petitioner testified that aggravated assault and reckless endangerment were not "dangerous felonies" that qualified for his conviction of using a firearm during the commission of a dangerous felony. He said that he discovered this while researching in the law library. He understood that Counsel brought this up on direct appeal. The Petitioner said that he chose to dismiss his appeal because he thought he would have a better argument on post-conviction. He said he also thought his appeal was likely to be denied anyway, according to what Counsel had told him. The Petitioner said that, had Counsel informed him that he needed to pursue his appeal, he would have done so.

Counsel was recalled, and he testified that he did not remember the Petitioner giving him the names of any alibi witnesses. Counsel said that he had the Petitioner's co-defendant's preliminary hearing transcript, which he used to prepare. He said that the court reporter was going to transcribe the Petitioner's preliminary hearing but did not get to it before the trial date. Rather than seek a continuance, they went forward with the case using the transcript from the Petitioner's co-defendant's hearing.

Counsel recounted how he explained to the Petitioner via letter that his case would be over if he chose to withdraw his appeal.

During cross-examination, Counsel agreed that, had he waited for the preliminary hearing to be transcribed, there may have been more evidence he could have used to impeach the witnesses who testified at trial.

Based upon this evidence the post-conviction court denied the Petitioner's petition for post-conviction relief. It found that the Petitioner had failed to prove his allegations by clear and convincing evidence. It stated:

> The Court finds that the advice given and the services rendered by [Counsel] were certainly within the range of competence demanded of attorneys representing defendants in criminal cases. The Court also finds that [the Petitioner] has failed to show that his attorney's performance was deficient or that any alleged deficient performance by [Counsel] somehow prejudiced the [Petitioner].

4

The evidence in this case shows that Petitioner's trial counsel, [Counsel], had obtained full discovery from the State, and met with his client prior to the trial date. He reviewed the evidence with his client, and prepared a trial strategy, which was that the [Petitioner] was not involved in the shooting, and had no motive or reason to shoot at the alleged victims. [Counsel] testified that [the Petitioner] chose not to testify in his own defense at the trial.

[Counsel] testified that he was never given by his client the names of any "alibi witnesses" that could be located, and that his client never told him of any alleged "alibi" defense. The Court credits [Counsel's] testimony in this regard. [Counsel] also testified that there was nothing else he could have done differently at trial to effect the outcome. [The Petitioner] was acquitted by the jury of the more serious charges of Attempted 2nd Degree Murder.

[The Petitioner] testified that his attorney was ineffective at trial for various reasons. [The] Petitioner claims that his attorney failed to obtain a copy of the preliminary hearing and failed to locate two potential alibi witnesses. However, [the Petitioner] failed to state who these alleged alibi witnesses were, or what they would have testified to at trial. [The Petitioner] bears the burden of demonstrating that he did in fact have an "alibi defense" in his case, which he has not done. The Court does not credit [the Petitioner's] testimony as to any of those claims of ineffectiveness by [Counsel], or that he potentially had an alibi defense in this case.

Furthermore, the Petitioner does not allege any ineffective assistance of counsel with regards to his appeal or to the dismissal of his appeal. He testified that he understandingly made a decision to dismiss his own appeal, and that [Counsel] never told him to dismiss his appeal. The [Petitioner] voluntarily dismissed his appeal to the . . . Court of [Criminal] Appeals on July 7th, 2014.

The Court also finds that the two convictions for the two separate counts of Aggravated Assault (one victim being Ms. Luteria Tyus and the other victim being Mr. Antonio White) does not violate the "double jeopardy" protections guaranteed by the U.S. and Tennessee Constitutions. The Court finds that the evidence adduced at trial was sufficient to support each of the [Petitioner's] convictions in this underlying criminal case.

After a careful review of all the evidence in this case, the Court finds that none of trial counsel's actions or omissions were so serious as to fall below the objective standard of reasonableness under prevailing professional norms. The Court finds that [Counsel's] representation was appropriate and that he provided [the Petitioner] with reasonably effective assistance. The Court further finds that [the Petitioner] has failed to show that there is a reasonable probability that, but for trial counsel's performance, the result of the trial proceeding would have been different.

The trial court order was filed January 29, 2015. On March 10, 2015, the Petitioner filed his notice of appeal.

## II. Analysis

On appeal, the Petitioner contends that the post-conviction court erred when it denied his post-conviction petition because he proved that he was denied the effective assistance of counsel. The State counters first that the Petitioner failed to file a timely notice of appeal, so he has waived his appeal. Next, it contends that the Petitioner failed to show that he received the ineffective assistance of counsel.

As an initial matter, we must determine whether the Petitioner's appeal is timely. Tennessee Rule of Appellate Procedure 4(a) states that the notice of appeal "shall be filed with and received by the clerk of the trial court within 30 days after the date of entry of the judgment appealed from." Here, the trial court issued its order on January 29, 2015, and the Petitioner's notice of appeal was file stamped March 10, 2015. Therefore, his notice of appeal was untimely. However, in a criminal case, "the 'notice of appeal' document is not jurisdictional and the filing of such document may be waived in the interest of justice." Tenn. R. App. P. 4(a). "In determining whether waiver is appropriate this Court shall consider the nature of the issues for review, the reasons for the delay in seeking relief, and other relevant factors presented in each case." *Michelle Pierre Hill v. State*, No. 01C01-9506-CC-00175, 1996 WL 63950, at *1 (Tenn. Crim. App., at Nashville, Feb. 13, 1996), *perm. app. denied* (Tenn. May 28, 1996). "Waiver is not automatic and should occur only when 'the interest of justice' mandates waiver." *State v. Rockwell*, 280 S.W.3d 212, 214 (Tenn. Crim. App. 2007).

In this case, the Petitioner offers no explanation about why his notice of appeal was not timely filed. The nature of the issues presented for review do not lend themselves to our holding that the interest of justice require our waiving of the filing of the notice of appeal. Even so, we will turn to address the Petitioner's contentions on their merits.

6

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2014). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2014). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997)). A post-conviction court's factual findings are subject to a de novo review by this Court; however, we must accord these factual findings a presumption of correctness, which can be overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely de novo review by this Court, with no presumption of correctness. *Id*. at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, "a petitioner must show that counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Goad v. State*, 938 S.W.2d 363, 369

7

(Tenn. 1996)).  When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances.  *Strickland*, 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988).  The reviewing court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Strickland*, 466 U.S. at 689-90.  In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation.  *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996).  In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'"  *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)).  Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result.  *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980).  "The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation.  However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation."  *House*, 44 S.W.3d at 515 (quoting *Goad*, 938 S.W.2d at 369).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002).  This reasonable probability must be "sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

In the case under submission, we conclude that the post-conviction court did not err when it determined that the Petitioner had not proven by clear and convincing evidence that he had received the ineffective assistance of counsel.  The Petitioner limits his assertion on appeal to arguing that Counsel should have advised him to appeal his case and should not have allowed him to waive his appeal.  The Petitioner testified that he understood that he was waiving his appeal and that he did so because he believed that doing so would make it more likely that he received post-conviction relief.  Counsel advised the Petitioner that, if he chose to waive his appeal, that his case would be over. The Petitioner testified that he understood as much.  We conclude that Counsel was not ineffective in this regard.

We further conclude that the Petitioner cannot prove prejudice. In *State v. Calvin Ellison*, we addressed this issue of whether a defendant's conviction for employing a firearm during the commission of a dangerous felony could stand when a jury failed to convict him of the underlying felony, attempted first degree murder, and instead convicted him of the lesser-included offense of misdemeanor reckless endangerment. No. W2013-02786-CCA-R3-CD, 2014 WL 6977725, at *1 (Tenn. Crim. App., at Jackson, Dec. 10, 2014), *perm. app. denied* (Tenn. June 17, 2015). We concluded that the issue presented a "textbook inconsistent verdict." *Id*. at *9. As such, the only issue was whether there was sufficient evidence in the record to sustain the defendant's conviction of employing a firearm during the commission of a dangerous felony. *Id.* We considered this question independently of the jury's verdict for any other count in the indictment. *Id.* (citations omitted).

Accordingly, because the Petitioner has not proven that Counsel was ineffective or that he was prejudiced by Counsel's representation, he is not entitled to relief.

### III. Conclusion

After a thorough review of the record and relevant authorities, we conclude that the Petitioner is not entitled to post-conviction relief. As such, we affirm the post-conviction court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE